IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JONATHAN CARLSON,

                 **Plaintiff,**

      v.

WELLSTAR HEALTH
SYSTEM, INC. et al.,

                 **Defendants.**

                                  **1:12-cv-3439-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendant Brenda Fore's Amended

Motion for Summary Judgment [52] ("Motion for Summary Judgment") and

Defendants WellStar Health System, Inc. and Theresa Sullivan's Consolidated

Motion for Summary Judgment [53] ("Motion for Summary Judgment").

**I.     BACKGROUND**

    A.     Procedural History

On October 3, 2012, Plaintiff Jonathan Carlson ("Plaintiff") filed this

employment discrimination action against his former employer WellStar Health

Systems, Inc. ("WellStar") and his former supervisors Theresa Sullivan

("Sullivan") and Brenda Fore ("Fore") (collectively, "Defendants").  In his

Amended Complaint [24], Plaintiff asserts five causes of action: interference with

Plaintiff's rights under the Family and Medical Leave Act of 1993 ("FMLA") and retaliation against Plaintiff for exercising FMLA rights (Count I); discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA") by failing to accommodate Plaintiff's disabilities, creating a hostile work environment, and retaliating against Plaintiff (Count II); defamation (Count III); intentional infliction of emotional distress (Count IV); and liability for attorney's fees (Count V).

On October 4, 2013, Fore, proceeding *pro se*, filed her Motion for Summary Judgment on all of Plaintiff's claims.  On October 5, 2013, WellStar and Sullivan filed their Motion for Summary Judgment on all of Plaintiff's claims.[1]  On November 9, 2013, Plaintiff filed his opposition to the Defendants' Motions for Summary Judgment.  Plaintiff expressly conceded that Defendants are entitled to summary judgment on certain claims: the ADA claims based on hostile work environment and retaliation; the defamation and intentional infliction of emotional distress claims; and the FMLA claims against Sullivan and Fore.  Plaintiff also failed to oppose, or otherwise respond to, Defendants' request for summary judgment on the ADA claims against Sullivan and Fore.

The remaining claims to be decided here are Plaintiff's FMLA claims

---

[1] In her submission, Fore incorporates all of the arguments advanced by WellStar and Sullivan in their joint Motion for Summary Judgment.

against WellStar and Plaintiff's ADA claim, based on the failure to accommodate, against WellStar.

B.    Relevant Factual Background[2]

Plaintiff suffers from cerebral palsy and hydrocephalus.  (SAMF ¶ 8.) Plaintiff's conditions cause him certain limitations, including being unable to efficiently perform what he describes as "secretarial" duties, such as taking notes, accurate sticker placement, removing staples, using complex computer systems, and organizing documents.  (Id. ¶ 15.)

Plaintiff began working for WellStar, a system of healthcare facilities, in May 2007 as a technician assistant in WellStar's Cobb Hospital.  (SUMF ¶ 17.)  In February 2010, Plaintiff transferred to the Hospital's Emergency Department (the "ED") and became an ED Technician.  (Id. ¶¶ 25, 27.)  As an ED Technician, Plaintiff was responsible for basic patient care, including assisting nurses, drawing

---

[2] These facts are taken from the following statements of facts submitted in accordance with Local Civil Rule 56.1: WellStar and Sullivan's Consolidated Statement of Undisputed Material Facts [53-2] ("SUMF"), Plaintiff's Response to the SUMF [65-2] ("Resp. SUMF"), Plaintiff's Statement of Additional Material Facts [65-3] ("SAMF"), and Defendant's Response to the SAMF [71-1] ("Resp. SAMF").  Where a party disputed a factual assertion contained in a statement of facts, the Court also considered the specific exhibits cited in support of the assertion.  See LR 56.1(B)(3), NDGa (providing that the court deems a party's SUMF citation as supportive of the asserted fact "unless the respondent specifically informs the court to the contrary in the response").

blood, performing EKGs, inserting catheters and placing splints on patients, and transporting patients.  (Id. ¶ 27.)

On October 21, 2011, Plaintiff became upset after a meeting with Sullivan, one of his supervisors.  (Id. ¶ 56; Resp. SUMF ¶ 56.)  The parties dispute the exact events that occurred after the meeting.  They agree that Plaintiff requested, and was denied, a fifteen-minute break.  (SUMF ¶ 56; SAMF ¶ 22.)  Sullivan and Fore, another supervisor, then closely observed Plaintiff to ensure that he was performing his work.  (SUMF ¶ 57; SAMF ¶ 24.)  After approximately 15 minutes, Plaintiff states the he had "a break down due to stress and anxiety."  (SAMF ¶ 26.) He went into a patient room, where he curled up on the floor crying and hyperventilating.  (SUMF ¶ 58.)  Plaintiff then clocked out and submitted a request for leave under the FMLA.  (SAMF ¶ 27.)  WellStar's Assistant Vice President, Joe Herzberg ("Herzberg"), received reports of the incident, and he granted Plaintiff's leave request.  (Id. ¶ 29.)

On October 22, 2011, one of Plaintiff's co-workers reported to WellStar's management that she had recently encountered Plaintiff and that Plaintiff told her, "I hate f***ing WellStar and I hate management" and "[t]hey are going to say

instead of he went postal, he went Tech." (SUMF ¶ 62.)[3]  Around the same time, a different co-worker reported to Sullivan that Plaintiff's behavior made her "fear for her life at work." (Id. ¶ 63.)  Herzberg received these reports.  (See SUMF ¶ 70.)

While Plaintiff was on leave, Herzberg decided, based on reports of Plaintiff's disruptive behavior during the October 21, 2011, incident and reports of Plaintiff's threatening statements, that Plaintiff could not continue work in the ED, or in any other clinical or patient care position.  (Id. ¶ 77.)  Herzberg decided to offer Plaintiff a position as a Chart Preparation Technician ("CP Technician") in the Health Information Management Department (the "HIM Department").  (Id. ¶ 81.)

Plaintiff was concerned about accepting the CP Technician position because of "secretarial" duties involved in performing the job.  (See id. ¶ 84.)  WellStar gave Plaintiff the option to remain on leave rather than accept the position.  (Id. ¶ 88.)  Plaintiff reviewed the job description, interviewed with the HIM Department manager to learn about the job, and ultimately accepted the position. (Id. ¶¶ 87–88.)  Plaintiff returned from leave on December 14, 2011, and began working as a CP Technician.  (Id. ¶ 91.)

---

[3] Plaintiff denies that he made these statements but does not deny that the co-worker made the report.

On his first day in the HIM Department, Plaintiff became upset about his new position and complained to a co-worker.  (Id. ¶¶ 92–93.)  Plaintiff then complained to the HIM Department manager.  (Id. ¶ 95.)  The manager reported to Herzberg that Plaintiff had treated her, and the HIM Department staff, with contempt and disrespect and that Plaintiff had an intimidating and threatening demeanor.  (Id. ¶ 96.)[4]  Based on this report, and previous reports of Plaintiff's misconduct on October 21, 2011, Herzberg terminated Plaintiff's employment.  (Id. ¶¶ 98–99.)[5]

## II.   DISCUSSION

### A.   Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is

---

[4] Plaintiff denies that his behavior was as reported, but he does not deny that Herzberg received the report.

[5] A document referred to as a "be on the lookout notice," or "BOLO notice," was contained in the files of the Cobb Hospital security department.  (SAMF ¶ 17.)  The BOLO Notice was dated October 19, 2011, and stated that Plaintiff was "terminated."  (Id.)  Defendant has explained that a BOLO notice can be created based on any complaint to security and that a notation of "termination" is added to an existing BOLO notice without amending the date of the notice.  (Resp. SAMF ¶ 17.)

genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at

1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

      B.     Analysis

          1.     *FMLA Claims*

The FMLA guarantees eligible employees the right to twelve (12) weeks of leave during any twelve-month period because of a serious health condition that makes the employee unable to perform the functions of the employee's position. 29 U.S.C. § 2612(a)(1).  "To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act."  Strickland v. Water Works, 239 F.3d 1199, 1206 (11th Cir. 2001).  Plaintiff here asserts both an interference claim and a retaliation claim.

i.      Interference

Under the FMLA, it is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]." 29 U.S.C. §2615(a)(1).  These rights include reinstatement of an employee, upon return from leave, to the same position or to an "equivalent" position.  Id. § 2614(a)(1) ("[A]ny eligible employee who takes leave under [the FMLA] . . . shall be entitled, on return from such leave . . . to be restored by the employer to the position of employment held by the employee when the leave commenced; or . . . to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.").  Plaintiff argues that WellStar interfered with his right to reinstatement because it did not permit Plaintiff to return to his position as an ED Technician and because the position offered to Plaintiff, as a CP Technician, was not "equivalent."

Under the FMLA, an employee's right to reinstatement is not absolute.  See O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1354 (11th Cir. 2000).  The FMLA provides that "[n]othing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B).  After using FMLA

benefits, "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."  29 C.F.R. § 825.216(a).  Thus, "when an 'eligible employee' who was on FMLA leave alleges [his] employer denied [his] FMLA right to reinstatement, the employer has an opportunity to demonstrate it would have discharged the employee even had [he] not been on FMLA leave." O'Connor, 200 F.3d at 1354.

An employer is not liable for a violation of the FMLA if it fails to reinstate an employee for reasons unrelated to the FMLA leave.  See O'Connor, 200 F.3d at 1354 ("[W]hen an 'eligible employee' who was on FMLA leave alleges her employer denied her FMLA right to reinstatement, the employer has an opportunity to demonstrate it would have discharged the employee even had she not been on FMLA leave."); Leach v. State Farm Mut. Auto. Ins. Co., 431 F. App'x 771, 776 (11th Cir. 2011) ("If the employer shows it refused to reinstate the employee 'for a reason wholly unrelated to FMLA leave, the employer is not liable.'" (quoting Strickland, 239 F.3d at 1208)); see also Throneberry v. McGehee Desha Cnty. Hosp., 403 F.3d 972, 977 (8th Cir. 2006) ("The FMLA simply does not force an employer to retain an employee on FMLA leave when the employer would not have retained the employee had the employee not been on FMLA

10

leave.").  To avoid liability for failing to reinstate an employee, the employer must show that the employee's right to take FMLA leave was not considered in the decision to terminate the employee.  See Strickland, 239 F.3d at 1208.  If FMLA was in any way considered in reaching a termination decision, this constitutes interference with the employee's FMLA rights.  The employer bears the burden of demonstrating that its reasons for terminating an employee were wholly unrelated to FMLA leave.  See Strickland, 239 F.3d at 1208; Throneberry, 403 F.3d at 979.

In this case, Defendants argue that Plaintiff was not entitled to reinstatement, under the FMLA, because WellStar decided to remove Plaintiff from the position of ED Technician for reasons unrelated to Plaintiff's FMLA leave.  Herzberg, WellStar's Assistant Vice President, made the decision to remove Plaintiff from his position.  Herzberg received reports that Plaintiff had made co-workers in the ED feel threatened, including because Plaintiff told a co-worker that he would "go postal."  Herzberg also received reports that Plaintiff had engaged in disruptive behavior, including the October 21, 2011, incident in which Plaintiff had a "break down" in the ED.  Herzberg testified that, on the basis of these reports, he determined that Plaintiff's conduct could negatively impact patient care and that Plaintiff therefore could not continue employment in any clinical, or patient care,

role, including as an ED Technician.  Herzberg decided not to reinstate Plaintiff to the position of ED Technician, or to any other patient care position.

Plaintiff does not dispute that Herzberg received reports of Plaintiff's allegedly threatening and disruptive behavior, and Plaintiff has not submitted any evidence to support that Herzberg's decision not to reinstate Plaintiff was based on any factor other than these reports.  Plaintiff instead denies the accuracy of the reports, citing his affidavit in which he denies ever acting in a manner he "believed" to be threatening.[6]  (E.g., Pl.'s Resp. SUMF ¶ 78 (citing Pl.'s Ex. 3 ¶¶ 28, 30).)  Even if Plaintiff's denials are sufficient to show a genuine dispute over the accuracy of the reports of misconduct, the dispute is not material because the relevant issue is the reason for Herzberg's decision, not the accuracy of the

---

[6] Plaintiff also generally objects that Herzberg's testimony, regarding the reports he received about Plaintiff's conduct, is hearsay.  The Court disagrees.  Hearsay is an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Defendants have not submitted the reports of Plaintiff's misconduct to prove that Plaintiff engaged in misconduct.  Defendants submitted the reports to show the information that Herzberg received and then used to make his reinstatement decision.  See, e.g., Henderson v. FedEx Express, 442 F. App'x 502, 505 (11th Cir. 2011) (explaining that testimony describing the contents of a videotape allegedly showing timecard falsification was not hearsay because "the district court considered that testimony not for the truth of the matter asserted—that [plaintiff] actually fabricated his time card—but as evidence of the decisionmakers' state of mind at the time that they terminated [plaintiff's] employment").

reports made to him and on which he based his decision, and not the soundness of the decision.  See Leach, 431 F. App'x at 777.

In Leach, the employee's supervisor reported to upper management that the employee had been insubordinate.  Id. at 772.  The employee then went on FMLA leave.  Id.  Upper management decided to terminate the employee, based on the report of insubordination.  Id. at 773–74.  The employee disputed that he had been insubordinate.  Id. at 776–77.  The Eleventh Circuit explained that the employee's dispute was not relevant because the court's "inquiry is limited to whether the employer reasonably believed in good faith that the employee had engaged in misconduct, not whether the employee actually did so."  Id. at 777.  Because the employee failed to present any evidence showing that upper management was unreasonable in accepting the supervisor's report, the court affirmed summary judgment for the employer.  Id.

In this case, as in Leach, the record does not contain any evidence supporting that Herzberg's reliance on reports of Plaintiff's misconduct was unreasonable, or that Herzberg's decision not to reinstate Plaintiff was based on other than the reports.  Plaintiff specifically does not offer any evidence that his discharge was based on Plaintiff's FMLA leave.  Defendants are entitled to summary judgment on Plaintiff's FMLA interference claim.

ii.     Retaliation

"[T]o succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Strickland, 239 F.3d at 1207. Plaintiff alleges that WellStar intentionally discriminated against him for taking FMLA leave, by terminating his employment shortly after he returned from leave. Defendant argues that the record does not support Plaintiff's claim for retaliation.

A plaintiff may prove a claim of FMLA retaliation based on the exercise of an FMLA right through direct or circumstantial evidence. See Strickland, 239 F.3d at 1207; Dockens v. DeKalb Cnty. Sch. Sys., 441 F. App'x 704, 708 (11th Cir. 2011). Direct evidence of discrimination "reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee," and it "proves the existence of a fact without inference or presumption." Dockens, 441 F. App'x at 708 (quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir.2004)). Circumstantial evidence is sufficient if it satisfies the rubric set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Strickland, 239 F.3d at 1207. In the absence of direct evidence or McDonnell Douglas circumstantial evidence, the defendant is entitled to summary

14

judgment.  See id.

In this case, Plaintiff does not contend that he has introduced any direct evidence of WellStar's discriminatory intent.  To avoid summary judgment, his evidence must satisfy McDonnell Douglas.

Under McDonnell Douglas, the plaintiff's evidence must first establish a *prima facie* case of discrimination.  In an FMLA retaliation case, the evidence must show that the employee "(1) engaged in a statutorily protected activity; (2) [he] suffered an adverse employment decision; and (3) the decision was causally related to the protected activity."  Schaaf v. SmithKline Beecham Corp., 602 F.3d 1236, 1243 (11th Cir. 2010).  If the plaintiff establishes a *prima facie* case, the defendant must introduce evidence showing a legitimate, non-discriminatory reason for the challenged employment action.  Id.  If such a reason is given, the plaintiff must prove that the stated reason is a pretext for unlawful discrimination. Id. at 1244.

In this case, Defendants argue that, even if Plaintiff has made a *prima facie* showing of discrimination, they have proffered a legitimate, non-discriminatory reason for Plaintiff's termination.[7]  Herzberg received reports that, on Plaintiff's

---

[7] Defendants also argue that Plaintiff failed to establish a *prima facie* case because the record does not contain evidence that Plaintiff's termination was "causally related" to Plaintiff's FMLA leave.  Because the Court disposes of the FMLA

first day of work in the HIM Department, Plaintiff treated his new manager and co-workers with contempt and disrespect and made them feel intimidated and threatened.  Herzberg testified that he terminated Plaintiff because of these reports. (SUMF ¶ 96; Def.'s Ex. 96.)

Plaintiff argues that Herzberg's explanation is pretextual because WellStar made the decision to fire Plaintiff on October 19, 2011, nearly two months before Plaintiff's alleged misbehavior in the HIM Department.  Plaintiff cites as evidence of this decision the BOLO notice in the files of WellStar's security department, which was dated October 19, 2011, and indicated that Plaintiff was "terminated." Defendant disputes that the BOLO notice shows that Plaintiff had been fired on October 19, 2011.[8]  Even if the notice is sufficient to show a genuine dispute over when the decision to terminate Plaintiff was made, the notice is not evidence of pretext for discrimination.  Plaintiff did not request FMLA leave until after his

retaliation claim on different grounds, the Court does not reach this argument.  The Court notes that Plaintiff was fired on his first day back from FMLA leave, and that "[c]lose temporal proximity between the protected activity and the adverse action" may suffice to satisfy causation at the *prima facie* stage.  See Henderson, 442 F. App'x at 506.

[8] Defendant has submitted evidence showing that the security department's practice is to note an employee's termination on an existing BOLO notice, without changing the date of the notice.  Defendant thus argues that the "termination" notation on Plaintiff's BOLO notice was added to October 19, 2011, notice after Plaintiff's termination in December 2011.

October 21, 2011, "break down."[9]  If WellStar had decided to terminate Plaintiff on October 19, 2011, the decision cannot have been based on the FMLA leave, and Plaintiff has not otherwise submitted evidence that such a decision was based on FMLA discrimination.  See Schaaf, 602 F.3d at 1244 & n.3 ("[I]t is insufficient to show merely that an employer's reasons are pretextual; rather the plaintiff must show that the reasons are a pretext *for discrimination*.").

Plaintiff next argues that Herzberg's explanation is pretextual because WellStar offered, and Plaintiff accepted, a CP Technician position, which Defendants knew would be difficult for Plaintiff and which, Plaintiff argues, would cause Plaintiff to act out as he is alleged to have done.  The record does not contain any evidence that Plaintiff was fired because of his performance as a CP Technician, or that Defendants had any knowledge that Plaintiff would lash out at and threaten his co-workers if given a position in the HIM Department.  The Court finds that Plaintiff has failed to show that Herzberg's explanation for Plaintiff's termination is pretext for discrimination, and Defendants are entitled to summary judgment on Plaintiff's FMLA retaliation claim.

---

[9] The record does not specify whether Plaintiff's FMLA request was made on October 21, 2011, or on the next day.

2.   *ADA Claim*

The ADA generally requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee."  42 U.S.C § 12112(b)(5)(A).  Plaintiff alleges that WellStar failed to accommodate his disabilities because it transferred him from the position of ED Technician to the position of CP Technician in the HIM Department.[10]  Plaintiff argues that, with reasonable accommodations, he could have continued as an ED Technician and that his disabilities prevented him from performing the duties of a CP Technician. Plaintiff's arguments ignore the reasons for his transfer.  As discussed above, Herzberg testified that he transferred Plaintiff because of reports of Plaintiff's disruptive behavior and that he ultimately fired Plaintiff based on reports of continued disruptive behavior.  Plaintiff has not submitted any evidence that he was transferred or fired because of disability-related problems with his job

---

[10] Plaintiff's arguments regarding his ADA claim contain considerable extraneous assertions and are largely incomprehensible.  For example, Plaintiff argues that he once was denied a break, but he does not appear to assert that this denial is a basis for his claim here.  The Court nevertheless has engaged in significant effort to understand Plaintiff's claims, and finds that Plaintiff's ADA claim is based on Plaintiff's transfer to the HIM Department following his FMLA leave.

performance.[11]  Defendants are entitled to summary judgment on Plaintiff's ADA

claim.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Brenda Fore's Amended

Motion for Summary Judgment [52] and Defendants WellStar Health System, Inc.

and Theresa Sullivan's Consolidated Motion for Summary Judgment [53] are

**GRANTED**.

**SO ORDERED** this 16th day of June, 2014.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[11] Before he returned from leave, Plaintiff complained that his disabilities would prevent him from performing the duties of a CP Technician.  WellStar offered to allow Plaintiff to remain on leave, rather than terminate his employment.  Even if WellStar was obliged, under the ADA, to accommodate Plaintiff's complaint, the offer of continued leave was a "reasonable accommodation" under the ADA.  See, e.g., Moore v. Accenture, LLP, No. 06-15650, 2007 WL 3313152, at *4 (11th Cir. Nov. 9, 2007) ("Because Defendant afforded Plaintiff reasonable accommodation by allowing him to remain on leave of absence and thus to retain his insurance benefits, we conclude that Defendant had no duty under the ADA to provide Plaintiff with his choice of a different accommodation.").